# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 C 10252 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| PERMATRON CORPORATION, and ) | |
| HECTOR VILLALOBOS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Twin City Fire Insurance Company ("Twin City") seeks declaratory judgment that it does not have a duty to defend its insured, Permatron Corporation ("Permatron"), in an action involving a former employee of Permatron, Hector Villalobos ("Villalobos"). Before the Court is plaintiff's motion for summary judgment. For the reasons set forth below, plaintiff's motion [20] is granted.

## BACKGROUND

Twin City is an insurance provider that executed two Employment Practices Liability Policies with Permatron. (Compl. ¶ 10, ECF No. 1.) Permatron is an Illinois company that formerly employed Hector Villalobos. (*Id*. ¶¶ 1, 3.) Villalobos joined this suit solely as an interested party to be bound by the judgment herein. (*Id.* ¶ 4.)

On August 27, 2014, Permatron terminated Villalobos's employment. (Compl, Exhibit A, ¶ 16, ECF No. 1-1.) On September 3, 2014, Villalobos filed a charge of discrimination against Permatron with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") and provided notice of the charge to the president of Permatron, Leslye Sandberg. (Def's LR 56.1(b)(3)(a)(b) Stmt ¶¶ 7-8, ECF No. 28; Compl. ¶¶ 12-

13, ECF No. 1.) Sandberg responded in writing to Villalobos's IDHR charge on September 10, 2014. (Def's LR 56.1(b)(3)(a)(b) Stmt ¶ 9, ECF No. 28.)

On March 12, 2015, Villalobos filed amended charges of discrimination against Permatron with the EEOC and IDHR, alleging discrimination based on age and national origin and unlawful conduct by his employer. (Compl., Exhibit G, ECF No. 1-7.) The unlawful conduct allegation involved Villalobos exercising his rights under the Workers Compensation Act and being terminated as a result. (*Id.*) On April 22, 2015, Villalobos received his Notice of Rights to Sue letter from the EEOC. (*Id.* ¶¶ 10-11.)

On June 29, 2015, Villalobos filed a lawsuit, *Villalobos v. Permatron Corp.*, No. 15-cv-05748 (N.D. Ill. July 20, 2016) (the "*Villalobos* suit"), asserting claims of age discrimination, national origin discrimination, and retaliatory discharge. (*Id.* ¶ 6; Compl., Ex. A, ECF No. 1-1.) On July 8, 2015, Permatron requested coverage for the *Villalobos* suit; Twin City received the request on or about July 9, 2015. (Pl's LR 56.1(a) Stmt, Ex. A, ECF No. 22-2 at 1-3.) On August 11, 2015, Twin City denied Permatron's request for coverage for the *Villalobos* suit, citing a lack of notice and Section X of the policy, which bars coverage for Interrelated Wrongful Acts. (*Id.* ¶ 14; Pl's LR 56.1(a) Stmt, Ex. A, ECF No. 22-3.)

On November 12, 2015, Permatron learned that Villalobos intended to file an additional charge of retaliation against it. (*Id.* ¶ 16; Pl's LR 56.1(a) Stmt, Ex. D, ECF No. 22-5.) The additional charge involved Sandberg's alleged refusal to answer questions from prospective employers about Villalobos's employment with Permatron. (*Id.*) On November 16, 2015, Permatron requested coverage for the additional retaliation charge from Twin City. (Def's LR 56.1(b)(3)(a)(b) Stmt ¶ 17.) On November 23, 2015, Twin City denied the request, stating that

Villalobos's additional retaliation charge was an Interrelated Wrongful Act that was not timely reported. (*Id.* ¶ 18; Pl's LR 56.1(a) Stmt, Ex. E, ECF No. 22-6.)

On January 14, 2016, Villalobos filed another charge of retaliation against Permatron with the IDHR and EEOC, alleging that Permatron refused to answer questions from potential employers about Villalobos's employment with Permatron. (*Id.* ¶ 21.) On February 9, 2016, Permatron requested coverage from Twin City for the additional charge of retaliation. (*Id.* ¶ 22; Pl's LR 56.1(a) Stmt, Ex. F, ECF No. 22-7.) On March 10, 2016, Twin City again denied Permatron coverage for the same reasons it had cited in its August 2015 letter. (*Id.* ¶ 23; Pl's LR 56.1(a) Stmt, Ex. G, ECF No. 22-8.)

Permatron had two insurance policies with Twin City to cover liabilities arising from employment practices: one policy was effective from March 17, 2014 through March 17, 2015, and the other policy was effective from March 17, 2015 through March 17, 2016 (collectively referred to as "the Twin City policies" or "the policies"). (Compl., Ex. B-C, ECF No. 1.) Section II of the policies defines an "Employment Practices Claim" as any:

> (1) written demand for monetary damages or other civil relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;
>
> (2) civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or
>
> (3) formal administrative or regular proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document.
>
> by or on behalf of an Employee, and applicant for employment with an Insured Entity, or an Independent Contractor.

(*Id.*)

Section X of the policies discuss the interrelationship of claims, stating that "[a]ll claims based upon, arising from or in any way related to the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to be a single Claim for all purposes" under the policies. (*Id.*)

The policies define "Interrelated Wrongful Acts" as "Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies, or causes." (*Id.*)

Under the policies, the claim date for Interrelated Wrongful Acts occurs when "any of such Claims was first made, regardless of whether such date is before or during the Policy Period"; "notice of any Wrongful Act . . . was given to the insurer under the Policy"; or "notice of any Wrongful Act . . . was given under any prior insurance policy." (*Id.*) To receive liability coverage from Twin City, the policies require Permatron to "give [Twin City] written notice of any Claim as soon as practicable after a Notice Manager becomes aware of such Claim . . . ." (*Id.*) An employment practices claim means any proceedings before the EEOC or similar governmental agency, "commenced by the filing of a notice of charges, formal investigative order or similar document." (*Id.*) The policies required Permatron to notify Twin City of any such claim "as soon as practicable after a Notice Manager [became] aware of such claim" as a condition precedent for coverage. (*Id.*) At the latest, the policies required Permatron to notify Twin City "no more than 180 days after a Notice Manager becomes aware of such Claim"; "ninety . . . days after the effective date of said expiration or termination"; or "the expiration of the Extended Reporting Period, if applicable." (*Id.*)

The policies also include an allocation clause, which provide that if Permatron incurs losses "covered by this Policy and also loss that is not covered by this Policy because such Claim

4

includes both covered and uncovered matters," Twin City has a duty to defend "100% of [Permatron's] Defense Costs . . . allocated to covered Loss"; as well as "[a]ll other Loss . . . allocated between covered Loss and non-covered loss based upon the relative legal exposure of all parties to such matters." (*Id.*) The policies further state that the allocation of covered losses and non-covered losses would be "based upon the relative legal exposure of all parties to such matters." (*Id.*)

Twin City seeks declaratory judgment that it owes no duty to defend Permatron in the *Villalobos* suit. Permatron filed a counterclaim alleging breach of contract. (*See* Countercl., ECF No. 12.) Permatron says that Villalobos's claims do not arise from the same interrelated wrongful act, and Permatron has fulfilled its obligation of reasonable notice to Twin City. (*Id*. ¶¶ 13-18.)

Twin City moves for summary judgment, arguing that it does not have a duty to defend or indemnify Permatron for any liability on any claim related to Villalobos's termination because Permatron failed to give timely notice of the claims, which Twin City considers to be Interrelated Wrongful Acts. Twin City also seeks summary judgment on Permatron's counterclaim, contending that Permatron failed to provide timely notice of the Villalobos claims and therefore forfeited any coverage available. Permatron responds that the claims are not Interrelated Wrongful Acts and that it provided Twin City with reasonable notice of Villalobos's claims. Permatron requests the Court to find, as a matter of law, that Twin City breached its duty to defend Permatron against the claims brought by Villalobos.

**STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

5

Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). It is well settled that at the summary-judgment stage, the court does not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts; those are jury functions. *See Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014).

## DISCUSSION

A commercial general liability insurer owes two overarching duties to its insured: a duty to defend and a duty to indemnify. The duty to defend is broader than the duty to indemnify because it arises when the insured faces a suit in which the complaint contains allegations falling "within or *potentially* within policy coverage . . . even if the allegations are groundless, false or fraudulent." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005) (emphasis added). In contrast, the duty to indemnify arises only after the insured "has incurred liability as a result of the underlying claim," and then "only if 'the insured's activity and the resulting loss or damage *actually* fall within the . . . policy's coverage,'" based on the factual determinations made in the underlying action. *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 492 (Ill. 2001). When a policy's provision is clear and unambiguous, "its

6

language must be taken in its plain, ordinary and popular sense." *Home Indem. Co. v. Wil-Freds, Inc.*, 601 N.E.2d 281, 284 (Ill. App. Ct. 1992). In considering whether an underlying complaint triggers an insurer's duty to defend, the underlying complaint is to be "liberally construed in favor of the insured, and doubts and ambiguities are to be construed in favor of the insured." *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 722 (Ill. App. Ct. 2004). An insurer may, however, "refuse to defend an action in which, from the face of the complaint, the allegations are clearly outside the bounds of the policy coverage." *Am. Safety Cas. Ins. Co. v. Cty of Waukegan*, 776 F. Supp. 2d 670, 711 (N.D. Ill. 2011) (quoting *National Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010)).

*Villalobos's claims*

Villalobos filed several claims with the EEOC and IDHR. On November 3, 2014, he filed a claim of discrimination based on age and national origin (the "initial claim"). This claim stems from several encounters Villalobos allegedly had with Permatron's new general manager—the general manager allegedly created a sham performance improvement plan for Villalobos, issued an unlawful English only rule, issued sham written warnings to Villalobos, told Villalobos he was too old for the job, and told Villalobos that he would fire him if he did not retire.

On March 12, 2015, Villalobos filed amended charges where he added a claim of unlawful conduct (the "amended claim"). The unlawful conduct claim involved the exercise of Villalobos's rights under the Workers Compensation Act. Villalobos alleged that he suffered two workplace injuries while employed at Permatron, and Permatron wrongly instructed him to not pursue his rights under the Act. Despite these instructions, Villalobos filed a claim for his July 2014 injury and was terminated as a result.

On January 14, 2016, Villalobos filed a retaliation claim based on Sandberg's refusal to answer questions from prospective employers about Villalobos (the "retaliation claim").

*Timely Notification*

Twin City argues that it has no duty to defend Permatron in the *Villalobos* suit because Permatron failed to notify it of Villalobos's claims within 180 days as required by the policies. Insurance policy notice provisions impose "valid prerequisites to insurance coverage." *W. Am. Ins. Co. v. Yorkville Nat'l Bank*, 939 N.E.2d 288, 293 (Ill. 2010). An insurer's duty to defend its insured is triggered when "(1) the allegations in the underlying tort complaint potentially fall within the policy's coverage provisions, and in addition (2) the insurer has actual notice of the underlying lawsuit." *Progressive Ins. Co. v. Universal Cas. Co.*, 807 N.E.2d 577, 586-87 (Ill. App. Ct. 2004). An insurer has actual notice of the underlying lawsuit when the notice "sufficiently permits the insurer to locate and defend the lawsuit." *Id.* at 587 (citing *Cincinnati Cos. v. W. Am. Ins. Co.*, 701 N.E.2d 499, 505 (Ill. 1998). The insurer "must know both that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of . . . its policies." *Id.* Here, the policies at issue required Permatron to notify Twin City of Villalobos's initial discrimination claim within 180 days of when the Notice Manager became aware of the charges. It is undisputed that Sandberg was aware of Villalobos's initial claim on September 10, 2014 when Sandberg responded to IDHR. To ensure coverage, Permatron was required to notify Twin City of the claim by March 2015. Permatron failed to do so. Instead, it waited until July 2015 (more than 300 days) before notifying Twin City of Villalobos's initial claim. Based on these undisputed facts, it is clear that Permatron did not timely notify Twin City of Villalobos's initial claim. Accordingly, the Court finds that Twin City does not have a duty to defend Permatron in Villalobos's initial claim of discrimination.

*Interrelated Wrongful Acts*

Permatron argues that, even if it failed to timely notify Twin City of Villalobos's initial claim, it is still entitled to coverage because Villalobos's multiple claims against Permatron are separate and distinct. Although the claims all related generally to Villalobos's termination, Permatron says that the discrimination claim, workers' compensation retaliation claim, and post-employment retaliation claim are separate in time and scope—they do not arise out of the same Interrelated Wrongful Acts. Permatron argues that the alleged late notice for the initial claim has no bearing on coverage for Villalobos's other claims.

Twin City maintains that Villalobos's claims are not separate and distinct acts, rather, they are Interrelated Wrongful Acts as defined under the policies because they are based on the same event: Villalobos's termination. Twin City also points out that Villalobos is not seeking workers' compensation benefits in his suit and, regardless, the policies do not cover workers' compensation claims. In essence, Twin City says that Permatron's failure to timely notify it of Villalobos's claims absolves it of any duty to defend Permatron in the *Villalobos* suit and any claims related to Villalobos's termination.

"Interrelated Wrongful Acts" are defined under the policies as "[w]rongful [a]cts that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes." (Pl's LR 56.1 Stmt ¶ 20, ECF No. 22 at 6.) The policies further state:

> [A]ll Claims based upon, arising from or in any way related to the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to be a single Claim for all purposes under Policy first made on the earliest date that:
>
> (A) any of such claims was first made, regardless of whether such date is before or during the Policy Period;

9

(B) notice of any Wrongful Act described above was given to the Insurer under this Policy pursuant to the section tilled NOTICE OF CLAIM found in the applicable <u>Liability Coverage Part</u>; or

(C) notice of any Wrongful Act described above was given under any prior insurance policy.

(*Id.*)

*The Amended Charges*

Permatron argues that Villalobos's amended claim (for exercising his rights under the Workers Compensation Act) is not an Interrelated Wrongful Act as defined by the policies and that Twin City has a duty to defend it for this claim. Permatron cites several cases in support of its argument that the claims are not identical and arise out of distinct acts. The Court is not persuaded by those authorities. The policies in those cases, as well as the underlying facts, are different from the policies and facts at issue here. Permatron's contention that Villalobos's worker's compensation claim is separate and distinct is also unpersuasive. As previously noted, Villalobos's complaint contains three claims for discrimination and one claim for retaliation. While Villalobos says that Permatron told him to not pursue his rights under the Workers Compensation Act, Villalobos's amended claim is an employment claim. If it were a workers' compensation claim, the policies at issue preclude coverage.

After examining the policies at issue here as well as the claims filed with the IDHR and EEOC and the facts alleged in the underlying complaint, the Court finds that Villalobos's initial and amended claims are Interrelated Wrongful Acts as defined by the policies. Both claims have a common nexus of fact because they arise from a single event: the termination of Villalobos's employment with Permatron in August 2014. Because the Court finds that the initial claim and the amended claim are Interrelated Wrongful Acts as defined by the policies, and because

Permatron failed to provide Twin City with timely notice of the initial claim, Twin City has no duty to defend Permatron in relation to Villalobos's amended claim.

*The Retaliation Charges*

Permatron advances the same argument for Villalobos's retaliation claim (Sandberg's refusal to answer questions from prospective employers about Villalobos). Permatron says that the claim is separate and distinct and that Twin City has a duty to defend it for this claim. The Court rejects this argument because the retaliation claim also arises from Villalobos's termination. The facts before the Court reveal that Permatron terminated Villalobos's employment in August 2014, Villalobos sought new employment, potential employers contacted Permatron to discuss Villalobos's employment at Permatron, and Sandberg refused to discuss the matter. Section X of the policies provides that "[a]ll claims based upon, arising from or in any way related to the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to be a single Claim for all purposes" under the policies. (Compl., Exhibits B-C, ECF No. 1.) "Interrelated Wrongful Acts" are defined as "Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies, or causes." (*Id*.) These provisions, taken together, provide that virtually any shared circumstances and/or causal relationship are enough to link wrongful acts as interrelated. The language is quite broad, and Permatron provides the Court with no reason why this language should be applied more strictly than the plain language dictates. When applying the plain language of the policies, the Court finds that the initial claim and the retaliation claim have a common nexus in that they all arise from Villalobos's termination and are therefore Interrelated Wrongful Acts deemed to be part of the same claim. Permatron's failure to timely notify Twin

City of Villalobos's initial claim precludes coverage for the subsequent Villalobos claims identified in this suit.

Accordingly, Twin City does not have a duty to defend Permatron in the *Villalobos* suit and all related claims. Twin City is entitled to summary judgment, and Permatron's counterclaim is dismissed.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment [20] is granted. The Court finds that Twin City does not have a duty to defend Permatron in the *Villalobos* suit and related Villalobos claims. Civil case terminated.

**SO ORDERED.**                                  ENTERED:   March 30, 2018

_____
**JORGE L. ALONSO**
**United States District Judge**